ALEXANDER GUERRERO TORO,

                                        Plaintiff,

        -against-                                        Civ.No: 16-CV-06610
                                                                    (EAW)
NORTHSTAR DEMOLITION & REMEDIATION,

                                        Defendant.

## PLAINTIFF

Hon. Elizabeth A. Wolford, U.S.D.J.                    January 22, 2018
United States District Court for the
Western District of New York
Kenneth B.Keating Federal Building
100 State Street
Rochester , New York 14614


Dear Judge Wolford :


        I received a motion on January 11, 2018, about the company's request to dismiss the case, I answer this motion by presenting files related to my case and reliable evidence of the discrimination committed.

        In the company's petition there is an accompanying statement from the person Wendy J. Mellk, Esq, who is a lawyer for NorthStar Demolition and Remediation, LP. , mentioning that it is related to my case, this person today January 15, 2018, is the first time I hear his name and is mentioned in my case, never before until today I received a notification that is the legal representative of the company NorthStar Demolition and Remediation, LP. and since it is never related to my case, I ask you not to accept any document or statement that comes from this person or that is related to this person, because for me it is a totally unknown person and, therefore, can not relate to My case.

Below I present the different files that my case contains:

**File (A) Decision and Investigation of human Rights.**

        This file includes the facts as they happened on the day of my dismissal, with the case number of Human Rights No. (10179151) with federal case number No. (16GB601007), this file includes the decision and investigation led by New York State Division Human Rights.


**File Number (1) Unjustified Dismissal.**

        This File collects the evidence that was still working to work Full time and the evidence of the falsity of the statements presented by the company against me. The statement of Philip Piedmont and Adriel Y. Pereira are false, and the documents shown in this file ratify it and I can prove it in front of a jury.

**File Number (2) The Medical Recommendations mode by Doctor were not Followed.**

This file shows how the company violated the medical restrictions imposed by the doctor (in this file the photos were given to the Hon. Elizabeth A. Wolford, the photos were identified by the company attorney NorthStar Demolition and Remediation Tania J Mistretta, having in her possession these copies.)

**File Number (3) Medical and Physical problems due to the Work I did and the conditions in which they put me to work.**

This file includes the conditions in which I was working and the medical problems caused where in an oral trial I can demonstrate the abuse and the subhuman conditions in which the company had me working.

**File Number (4) Events and notifications to the company of Cases No. 10178548 and 10178236.**

**File Number (5) Psychological Exam**

I submit the last Psychological exam done since there is a file with all the medical records and the Psychological, Mental and Depressive consequences that the dismissal of the company NorthStar Demolition and Remediation has caused me.

I have submitted and sent the necessary evidence for the oral trial to take place and give me the opportunity to present myself and defend myself in front of a jury. If any additional information is needed, it will gladly be given.

Sincerely

Alexander Guerrero Toro.

Dated: ROCHESTER, New York
        January 22 ,2018

_____

ALEXANDER GUERRERO TORO
610 Calm Lake Cir. Apto B
ROCHESTER, NEW YORK , 14612

# (A) Decision and Investigation of human Rights.

Alexander Guerrero Toro                    Case Number 10179151
610 Calm Lake Cir Apto B
Rochester , NY 14612

I Alexander Guerrero Toro I do not agree with any of the statements made by
NorthStar Demolition and Remediation, Inc., since they are false and extorted, the
documents shown have a lack of credibility which I recommend that it be investigated for
possible manipulation and falsification of Documents.

The Acts occurred as follows, and for proof and veracity of my word also along with my
statement I show the documents that support the veracity of my words.

On December 14, 2015 at 11:20 am when I leave the dining room Eddie de Jesus
greets me and I say the following: That his greeting was from Juda that I betrayed Jesus
for 30 pieces of silver and I wonder why I I told him that he betrayed me by making a false
statement in the investigation of my lesson, and that he knew that what he had said was
totally false, that he knew the truth, I told him that notwithstanding that I did not care
because I had a surprise, because I had the proof and the witness of which was the truth.

On December 21, 2015 at 11:30 am Jeff Beckingham called me to the office and was
there with the other of the security chiefs who served as translator, and two more people
connected the phone the speaker, they me They say they were worried about what I told
Eddie de Jesus that I had a surprise, and they needed to know if that was a threat or what
it was about.

I explained the same thing to Eddie de Jesus, which was the evidence and witnesses
that I had to support the lie that he had said with the false testimony that he gave of my
injury, the person who was with Jeff I never I had seen, and I explained that I had been
mistreated and that I did not receive the necessary medical attention when I was injured
and when the person present asked me what the abuse was Jeff Beckingham quickly says
that he does not want to continue talking and is over the conversation .

At 4.30 pm when I sign Jeff Beckingham tells Javier that he needed to talk to me in the
presence of another worker and tells me that he could not have me in the company
because of my injury and the restrictions I had, that I I would give him the helmet, the
glasses and the shirt with the logo of the company and he says that because I give it to
him and I answer him that if he says goodbye to me I would have him that would be my
last Work because I was not willing to take more abuse to my person and disrespect and I
withdraw from the office. When I leave the checkpoint that is the exit where the security
guards are at 4: 42 pm the security check me out the pass that was the one that allowed
me to enter the plant



**Division of
Human Rights**

NEW YORK STATE
DIVISION OF HUMAN RIGHTS

| | |
|---|---|
| NEW YORK STATE DIVISION OF HUMAN RIGHTS on the Complaint of<br><br>ALEXANDER GUERRERO TORO,<br>Complainant,<br><br>v.<br><br>NORTHSTAR DEMOLITION & REMEDIATION, LP,<br>Respondent. | **DETERMINATION AFTER INVESTIGATION**<br><br>Case No.<br>10179151 |

Federal Charge No. 16GB601007

On 12/24/2015, Alexander Guerrero Toro filed a verified complaint with the New York State Division of Human Rights ("Division"), charging the above-named Respondent with an unlawful discriminatory practice relating to employment because of disability, opposed discrimination/retaliation in violation of N.Y. Exec. Law, art. 15 ("Human Rights Law").

After investigation, the Division has determined that it has jurisdiction in this matter and that <u>PROBABLE CAUSE</u> exists to believe that the Respondent has engaged in or is engaging in the unlawful discriminatory practice complained of.

Pursuant to the Human Rights Law, this matter is recommended for public hearing. The parties will be advised of further proceedings.

Dated:    APR 1 1 2016
Rochester, New York

STATE DIVISION OF HUMAN RIGHTS

By: *Julia B Day*
Julia B. Day
Regional Director

11

# NEW YORK STATE
# DIVISION OF HUMAN RIGHTS

TO:      Files

FROM:   Julia B. Day
         Regional Director

REGION:  Rochester

DATE: April 5, 2016

SDHR CASE NO: 10179151-15-E-DO-E

Federal Charge No. 16GB601007

SUBJECT:   Alexander Guerrero Toro v. NorthStar Demolition & Remediation, LP

---

## FINAL INVESTIGATION REPORT AND BASIS OF DETERMINATION

### I.   CASE SUMMARY

This is a verified complaint, filed by complainant, Alexander Guerrero Toro, on Thu 12/24/2015. The complainant who has carpal tunnel syndrome and filed prior NYS Division of Human Rights complaints aginst Respondent, charges the respondent with unlawful discriminatory practices in relation to employment because of disability, opposed discrimination/retaliation.

### II.   SUMMARY OF INVESTIGATION

Complainant's Position:

Complainant states that on December 21, 2015, he was called into a meeting and told that Respondent could not give him any work due to his medical restrictions and disability. Complainant also says that he was informed that Worker's Compensation would contact him to pay him. Complainant maintains that he had no say in the decision and he asserts that he was terminated due to his disability and prior discrimination and safety complaints.

Respondent's Position:

Respondent denies discriminating against Complainant. Respondent states that it continued to offer Complainant light duty work assignments since his restrictions were put in place in September of 2015, even though he was not able to perform his duties of general laborer with or without a reasonable accommodation. Respondent states that Complainant expressed concerns and dissatisfaction with any task assigned to him; as a result, Respondent says that it met with Complainant on December 21, 2015 in an attempt to accommodate his significant restrictions. Respondent states that during the meeting, it was agreed that because of Complainant's

17

dissatisfaction with performing the available tasks, he would go on a leave of absence until his medical restrictions were lifted, during which time he would be eligible to collect workers' compensation benefits. Respondent asserts that Complainant expressed that he was happy to go on this leave, since he would get paid $800 per week for 18 months to stay home and do nothing. Respondent maintains that it did not terminate Complainant's employment and expressly communicated to him that he was not being discharged. Respondent states that Complainant was told that his position would be held open for him and that he remains an employee of the company. Respondent states that while leaving the meeting on December 21, 2015, Complainant returned his safety equipment, despite being informed that he was not being laid off and he should keep his equipment. Respondent states that Complainant responded that he would not be coming back and that this was his last asbestos job. Respondent states that it had legitimate, non-retaliatory reasons for offering Complainant leave.

<u>Investigator's Observations:</u>

There are three companion complaints that Complainant has filed against Respondent: cases #10178236 (filing date October 30, 2015), #10178548 (filing date November 19, 2015) and #10179151 (filing date December 24, 2015). The first two cases resulted in a finding of No Probable Cause.

It should be noted that retaliation for OSHA complaints, as alleged in the complaint, is beyond the purview of the NYS Division of Human Rights.

The investigation of Complainant's prior cases showed that Complainant was injured in August of 2015, that he had medical restrictions, and that Respondent accommodated his medical restrictions with light duty assignments.

Investigation revealed that Respondent held a meeting with Complainant on December 21, 2015; however, the parties dispute what occurred during that meeting. According to Respondent, Complainant was unhappy with the light duty work assignments and did not want to do them, so Complainant was offered disability leave. Respondent further asserts that Complainant was happy to go on worker's compensation at that time. The employee who was present as a witness and the employee who acted as the Spanish interpreter at that meeting corroborated Respondent's version of the meeting. (*See*, Respondent's submission, received 3/23/16). Complainant maintains that he had no say in the decision to go on leave and that he was told that his employment was terminated.

Respondent states that it did not learn of Complainant's second and third NYS Division of Human Rights complaints until January 5, 2016; however, there is no dispute that Respondent received the first complaint prior to December 21, 2015.

Submitted by: *Jami Kaplan (JO)*
Jami Kaplan
Human Rights Specialist II

## III.    BASIS FOR DETERMINATION

Investigation showed that Complainant injured his arm/wrist in August of 2015 and was subsequently diagnosed with carpal tunnel syndrome.  Complainant was released to return to work with restrictions, and Respondent accommodated him with light duty assignments.  Investigation showed that on December 21, 2015, a meeting was held with Complainant; however, the parties dispute what transpired during the meeting.  According to Respondent, Complainant was unhappy with the light duty assignments and complained about them, so Complainant was offered the option of going out on disability leave. Respondent contends that Complainant was happy with the arrangement of going out on worker's compensation.  Complainant disputes Respondent's characterization of the December 21, 2015 meeting, and asserts that Respondent terminated his employment because of his injuries.  There is also temporal proximity between the filing of Complainant's prior NYS Division of Human Rights complaint in October of 2015 and his allegations regarding the December 21, 2015 meeting; Respondent asserts that it did not receive the other complaints until January of 2016.  There are material issues of fact remaining, including but not limited to, whether Complainant's employment was terminated on December 21, 2015; whether Complainant was offered medical leave, and if so, whether that leave was involuntary; whether the respondent could have continued the accommodations previously afforded to the complainant and if the complainant was willing to accept those accommodations, and whether Complainant was subjected to any unlawful adverse employment action because of his disability and/or prior NYS Division of Human Rights complaint(s).  These issues of material fact are best resolved in the context of a full public hearing, where there is sworn testimony and the opportunity for cross-examination.  Therefore, there is probable cause to support the allegations of the complaint.

Reviewed & Approved:    _Jami Kaplan (00)_

Jami Kaplan
Human Rights Specialist II

## IV.    DETERMINATION

Based on the foregoing, I find Probable Cause to support the allegations of the complaint.

_Julia B Day_

Julia B. Day
Regional Director

- 3 -

# (1) unjustified dismissal

*MATTHEW GRIER, D.O.*
*GERALD J. LEGLUE, JR., M.D.*
*Elissa Hughes, F.N.P.*

*Greg Maier, D.P.T.*
*Brianne Sisca, RPAC*
*Christina Morris, D.P.T.*

# RETURN TO WORK STATUS FORM

Patient Name: _Guerras-Turs, Alexandra_

### NY PHYSICAL MEDICINE CENTER
1295 Portland Avenue, Ste 9
Rochester, NY 14621
Phone: (585) 544-6410
Fax: (585) 544-9247

Matthew Grier, D.O.      Gerald J. Leglue, Jr., MD      Brianne Sisca, RPAC      Elissa Hughes, FNP

## TO BE COMPLETED BY PHYSICIAN:
(see next page for physical requirements of employee's duties)

Considering this employee's job duties and health condition, this employee may perform work in the following manner:

_____ FULL DUTY (no restrictions) beginning: Date: _____

___✓___ TEMPORARY ASSIGNMENT (modified or alternate duty) beginning: Date: _11/20/15_
_avoid repeated writing of paperwork._
_max lift 10#,_

Estimated Length of Temporary Assignment _12 wks_
_Right upper extremity:_
_avoid repeated grip/grasp_
☑ Full time      ☐ Part Time (____ Hours per day)      _ulnar/radial deviation_
(Please indicate restrictions to duty on next page.)

_____ OFF WORK until re-evaluation.    DATE OF NEXT OFFICE VISIT: _1/13/16_

Physician's Signature: _____      Date: _11/20/15_

## FOR AGENCY USE

Temporary Duty Assignment Begins: _____    Ends: _____
Temporary Duty Assignment: _____

### EMPLOYEE INSTRUCTIONS
**Return this form to your supervisor immediately after each visit to your health care provider.**

*Physical Medicine & Rehabilitation * 1295 Portland Ave., Rochester, New York 14621*



**Robert E. Beloten**
**Chair**

STATE OF NEW YORK
WORKERS' COMPENSATION BOARD
PO BOX 5205
BINGHAMTON, NY  13902-5205
*www.wcb.ny.gov*

(866) 211-0644

## State of New York - Workers' Compensation Board

## In regard to ALEXANDER GUERRERO-TORO, WCB Case #G119 8917

## NOTICE OF DECISION
*keep for your records*

At the Workers' Compensation hearing held on 01/26/2016 involving the claim of ALEXANDER GUERRERO-TORO at the Rochester hearing location, Judge Lawrence Abreu made the following decision, findings and directions:

AWARD :  The employer or insurance carrier is directed to pay the following awards, <u>less payments already made</u> by the employer or carrier, for the periods indicated below, unless employer or carrier files an application within 30 days after the date on which the decision was duly filed and served.

| | for disability over a period of | | at rate | |
|---|---|---|---|---|
| weeks | from | to | per week | the sum of |
| 0 | 12/3/2015 | 12/21/2015 | $0.00 | $0.00 |

- No compensable lost time.

| | | | | |
|---|---|---|---|---|
| 5.4 | 12/21/2015 | 1/27/2016 | $272.50 | $1,471.50 |

Carrier to continue payments at $272.50.

FEES:

As lien on above award payable by separate check by carrier TO CLAIMANT'S REPRESENTATIVE OR ATTORNEY:

| Sum of | To |
|---|---|
| $125.00 | Law Offices of Jose Perez |

deducted at $10.00 per week

DECISION:   Parties are directed to submit deposition transcript(s) of Dr. Shankman and Dr. Grier, pursuant to Sections 121 and 142 of the New York State Workers' Compensation Law. Deposition transcript(s) should be submitted by 3/29/2016 for further adjudication by a WC Law Judge. To insure the timely submission of the

*** Continued on next page ***

| | | |
|---|---|---|
| Claimant - | ALEXANDER GUERRERO-TORO | Employer - |
| Social Security No. - | | Carrier - |
| WCB Case No. - | G119 8917 | Carrier ID No. - |
| Date of Accident - | 08/21/2015 | Carrier Case No. - |
| District Office - | Rochester | |

LVI SERVICES INC
New Hampshire Insurance Co
W154009
555186537
Date of Filing of this Decision – 01/29/2016

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

EC-23 (4/98)

Page 1 of 2



**Robert E. Beloten
Chair**

STATE OF NEW YORK
WORKERS' COMPENSATION BOARD
PO BOX 5205
BINGHAMTON, NY 13902-5205
*www.wcb.ny.gov*

(866) 211-0644

## State of New York - Workers' Compensation Board

## In regard to ALEXANDER GUERRERO-TORO, WCB Case #G119 8917

### NOTICE OF DECISION
*keep for your records*

At the Workers' Compensation hearing held on 03/09/2016 involving the claim of ALEXANDER GUERRERO-TORO at the Rochester hearing location, Judge Paul Kotwas made the following decision, findings and directions:

AWARD : The employer or insurance carrier is directed to pay the following awards, <u>less payments already made</u> by the employer or carrier, for the periods indicated below, unless employer or carrier files an application within 30 days after the date on which the decision was duly filed and served.

| | for disability over a period of | | at rate | the sum of |
|---|---|---|---|---|
| weeks | from | to | per week | |
| 11.6 | 12/21/2015 | 3/10/2016 | $318.08 | $3,689.73 |

- Temporary partial disability.
- Modification of Prior award.

Carrier to continue payments at $318.08 temporary partial disability.

FEES:

As lien on above award payable by separate check by carrier TO CLAIMANT'S REPRESENTATIVE OR ATTORNEY:

| Sum of | To |
|---|---|
| $150.00 | Law Offices of Jose Perez |

deducted at $15 per week and payable when fully accumulated

DECISION:   The claimant ALEXANDER GUERRERO-TORO has an occupational disease which is amended to include bilateral carpal tunnel syndrome and left elbow ulnar neuropathy. The claimant's average weekly wage for the year worked before this work related injury or occupational disease is $954.25 per payroll.  Carrier is directed

*** Continued on next page ***

| Claimant - | ALEXANDER GUERRERO-TORO | Employer - | LVI SERVICES INC |
|---|---|---|---|
| Social Security No. - | | Carrier - | New Hampshire Insurance Co |
| WCB Case No. - | G119 8917 | Carrier ID No. - | W154009 |
| Date of Accident - | 08/21/2015 | Carrier Case No. - | 555186537 |
| District Office - | Rochester | Date of Filing of this Decision - | 03/14/2016 |

ATENCION:

Puede llamar a la oficina de la Junta de Compensacion Obrera, en su area correspondiente, cuyo numero de telefono aparece al principio de la pagina y pida informacion acerca de su reclamacion(caso).

EC-23 (4/98)                                                              285-0769                           Page 1 of 2

+                                                                            +

TCC 413.2                          Summary of Statement

NAME: ALEXANDER GUERRERO TORO      SS# 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      LO# 0839
        Effective Date: 12/21/2015

**Employer Name NORTHSTAR DEMOLITION AND**
**Employer Telephone Number 585 - 233 - 9669**
Today's Date 01/19/2016 @ 11:00 AM
ISSUE: MC/WC/CA
Issue Detection Date: 12/27/2015    Issue Source: OC

Statement taken by: VERONICA  VELEZ

☒ **Translation provided. Language Spanish**

Statement taken from the claimant:

My last day worked was 12/21/15. I was discharged because my employer had no more work for me within
my limitations. That was all I was told on 12/21/15. No other explanation was provided.

WC:

I am an asbestos remover. On 8/14/15 I went to work as normal and for the past 5 months I had been
working with a power washer machine. That day on 8/14/15 my hand was stiffed cramped and in severe
pain and swollen when I tired to press the hose handle. I kept working like that but on 8/21/15 my employer
finally sent me to a doctor. He told me I had carper tunnel syndrome from a repetitive work. The doctor
never took me out of work but I filed for a workers compensation case. I kept working with restrictions of
no repetitive motion and no lifting over 10 lbs. My employer allowed me to keep working watching the
water tanks. But on 12/21/15 I was discharged because he said he no longer had any work for me. I still
have litigations with my WC case. He should not have discharged me. But he did. I have not received any
payment for WC and we have a hearing set for 1/26/16.

Ca:

I am capable to work as of 12/21/15.

Although I still have restrictions of my right hand I am capable to work as long as I don't do repetitive
movemnet and don't lift over 10lbs. I already provided the medical information and the WC papers. I am
hoping to find work within my restrictions. But is going to be difficul because I am an asbstos remover and
no company is going to hire me knowing I have limitations due to injuries from working at another
company. But I am capable to work and I am looking for work.

    I understand that in order to be eligible for NYS unemployment Insurance Benefit I must be ready willing
and capable to look and accept work. I understand that if I am not capable to work I must notify the
department of labor through my weekly certifications or by calling the telephone claim center. I am capable
to work. I am looking for any work that will hire me within my restrictions. I cant do repetitive movements
and I cant lift more than 10lbs.

+  01-05   TCC413.2              Page 1 of 2                              +

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  000068
Page 68 of 122
WCRECORDS 000073

I under stand that to help my work search I should go to my local workforce office. I already providee the medical documentation.

2nd Statement taken at 11:45am on 1/19/16:

I understand that my employer has indicated that my WC case was going to be paid out. I have not received any information. I understand that if I go het approved for WC I must notify the telephone claim center immediately because I may have to receive a deduction of my unemployment benefit and possibly an overpayemtn of the weeks I may have already received.

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  000069
Page 69 of 122
**WCRECORDS 000074**

Unemployment Insurance Benefits Online

Menu    Department of Labor

# Official Record of Benefit Payment History

### Current Claim

| | |
|---|---|
| Name | Alexander Guerrero toro |
| Social Security Number | XXX-XX-5276 |
| Start/Effective Date | 12/21/2015 |
| Benefit Year Ending Date | 12/25/2016 |
| Weekly Benefit Amount | $417.00 |
| Maximum Amount Payable | $10,842.00 |
| Effective Days Remaining | 49 |

## Latest Transaction(s) as of 08/18/2016

- You last certified for benefits for the week ending 07/24/2016.
- Your payment for the week ending 04/03/2016 was released on 04/04/2016.

### *Effective Days*

Each day in a week (Monday through Sunday) that you qualify for benefits is called an effective day. There is a maximum of 4 effective days each week, and you must qualify for all 4 effective days in order to receive your total weekly benefit rate. For each day in the week that you are not eligible to receive benefits, you will receive one less effective day, which is equivalent to one fourth of your weekly benefit rate. For example, if you are not available to work one day in a week, or if you have worked any part of a day, or have received vacation or holiday pay for one day in a week, your benefits will be reduced by one effective day (the same as one-quarter of your benefit rate). You can receive a maximum of 104 effective days on your claim.

**Please allow three business days for benefits to be available.**

- If a payment was released and three days have passed and funds are not in your account, Direct Payment Card customers should contact Chase Customer Service at 1-877-221-1634.

Unemployment Insurance Benefits Online

Customers who have benefits directly deposited into a personal checking account should contact their own bank.

- If a payment is not listed as released within two business days of your certification, you may contact the Telephone Claims Center (TCC) at the toll-free 1-888-209-8124 number (1-877-358-5306 for out-of-state residents) between 8:00 am and 5:00 pm, Monday through Friday.

**Failure to complete and return questionnaires mailed to you will delay your claim or result in the denial and/or suspension of benefits.**

## Payment History

| Week Ending | Total Amount | Net Amount | Effective Days | Release Date | Type |
|---|---|---|---|---|---|
| 04/03/2016 | $417.00 | $364.88 | 4 | 04/04/2016 | Direct Payment Card |
| 03/27/2016 | $417.00 | $364.88 | 4 | 03/28/2016 | Direct Payment Card |
| 03/20/2016 | $417.00 | $364.88 | 4 | 03/21/2016 | Direct Payment Card |
| 03/13/2016 | $417.00 | $364.88 | 4 | 03/14/2016 | Direct Payment Card |
| 03/06/2016 | $417.00 | $364.88 | 4 | 03/07/2016 | Direct Payment Card |
| 02/28/2016 | $417.00 | $364.88 | 4 | 02/29/2016 | Direct Payment Card |
| 02/21/2016 | $417.00 | $364.88 | 4 | 02/22/2016 | Direct Payment Card |
| 02/14/2016 | $417.00 | $364.88 | 4 | 02/15/2016 | Direct Payment Card |
| 02/07/2016 | $417.00 | $364.88 | 4 | 02/08/2016 | Direct Payment Card |
| 01/31/2016 | $417.00 | $364.88 | 4 | 02/01/2016 | Direct Payment Card |
| 01/24/2016 | $309.75 | $271.04 | 4 | 01/25/2016 | Direct Payment Card |
| 01/24/2016 | $107.25 | $107.25 | 0 | 01/29/2016 | Offset |
| 01/03/2016 | $0.00 | $0.00 | 1 | 01/20/2016 | Waiting week |
| 12/27/2015 | $0.00 | $0.00 | 3 | 01/19/2016 | Waiting week |
| 01/17/2016 | $312.75 | $312.75 | 3 | 01/22/2016 | Offset |
| 01/17/2016 | $0.00 | $0.00 | 1 | 01/20/2016 | Forfeit |
| 01/10/2016 | $0.00 | $0.00 | 4 | 01/20/2016 | Forfeit |
| 01/03/2016 | $0.00 | $0.00 | 3 | 01/20/2016 | Forfeit |

(2) the medical recommendations made by the doctor were not followed.

## New York Physical Medicine Center, LLC

MATTHEW GRIER, D.O.
GERALD J. LEGLUE, JR., M.D.
Elissa Hughes, F.N.P.

Greg Maier, D.P.T.
Brianne Sisca, RPAC
Christina Morris, D.P.T.

# RETURN TO WORK STATUS FORM

Patient Name: _Guerrero, Tim, Alexander_

### NY PHYSICAL MEDICINE CENTER
1295 Portland Avenue, Ste 9
Rochester, NY 14621
Phone: (585) 544-6410
Fax: (585) 544-9247

Matthew Grier, D.O.        Gerald J. Leglue, Jr., MD        Brianne Sisca, RPAC        Elissa Hughes, FNP

### TO BE COMPLETED BY PHYSICIAN:
(see next page for physical requirements of employee's duties)

Considering this employee's job duties and health condition, this employee may perform work in the following manner:

_____ FULL DUTY (no restrictions) beginning:  Date: _____

___✓___ TEMPORARY ASSIGNMENT (modified or alternate duty) beginning: Date: _9/18/15_

　　　　Estimated Length of Temporary Assignment _6 wks_　　no use of right
　　　　☑ Full time　　☐ Part Time (____ Hours per day)　　upper extremity
　　　　(Please indicate restrictions to duty on next page.)

_____ OFF WORK until re-evaluation.   DATE OF NEXT OFFICE VISIT: _____

Physician's Signature: _____   Date: _9/18/15_

### FOR AGENCY USE

Temporary Duty Assignment Begins: _____   Ends: _____
Temporary Duty Assignment: _____

### EMPLOYEE INSTRUCTIONS
**Return this form to your supervisor Immediately after each visit to your health care provider.**

_Physical Medicine & Rehabilitation * 1295 Portland Ave., Rochester, New York 14621_

















(3) medical and physical problems due to the work I did and the conditions in which they put me to work.





# Greece Volunteer Ambulance

**5530 SHERIDAN DRIVE SUITE 3B**
**WILLIAMSVILLE, NY 14221**
**(888)897-4893**

Patient Name:   Alexander Guerrero-Toro

Insurance:

Patient Number:   23734389
Call Number:   37802245
Date Of Call:   10/28/2015
Call Time:   09:24 AM
Caller:   *Police/Fire/911
From Location:   1101 BEACH AVE
To Location:   ROCHESTER GENERAL HOSPITAL

**Alexander Guerrero-Toro**
**84 Brambury Dr**
**Apt C**
**ROCHESTER NY 14621**

Reason(s)   R51
For   R07.89
Transport

| DESCRIPTION OF CHARGES | HCPC | QUANTITY | UNIT PRICE | AMOUNT |
|---|---|---|---|---|
| Advance Life Support | A0427 | 1.0 | 1050.00 | 1050.00 |
| Mileage | A0425 | 9.3 | 26.00 | 241.80 |

Total Charges   1291.80

Total Credits   0.00

**PLEASE PAY THIS AMOUNT =>**   **$1291.80**

---

**^DETACH ALONG ABOVE LINE AND RETURN STUB WITH YOUR PAYMENT^**

Patient Name:   Guerrero-Toro, Alexander
Patient Number:   23734389

Call Number:   37802245
Current Date:   11/02/2015

**Amount Due: $1291.80**
Amount
Enclosed $ _____

**If you have insurance, please fill out the enclosed form, sign it and return it to us. If your insurance information is not provided you will be responsible for the balance due at this time. Thank you!**

**Greece Volunteer Ambulance   5530 SHERIDAN DRIVE SUITE 3B   WILLIAMSVILLE, NY 14221**

Rochester General Hospital
1425 Portland Avenue
Rochester, NY 14621
(585) 922-2000

Alexander Guerrero-Toro
10/29/2015

WORK/SCHOOL RELEASE FORM

This notice verifies that the above named was seen and treated in our hospital on the above printed date. Alexander will be able to return to work/school on 11-2-15.

After this date, Alexander should be able to participate in all duties.

Note: If the symptoms continue and the employee/student is unable to participate in full work/school activities, Please advise the employee/student to follow up with his physician.

Luanne Bianchi, PA

Work/School Excuse

**RGH Emergency Services**
1425 Portland Ave
Rochester NY 14621-3001
Phone: 585-922-2000

October 27, 2015

Patient:        **Alexander Guerrero-Toro**
Date of Birth:  **12/28/1976**
Date of Visit:  **10/27/2015**

To Whom It May Concern:

Alexander Guerrero-Toro was seen and treated in our emergency department on 10/27/2015.

He may return to work / school / _____10/28/15_____ on ___10/28/15___

If you have any questions or concerns, please don't hesitate to call.

Sincerely,

Emergency Department Provider

**Work/School Excuse**

**RGH Emergency Services**
1425 Portland Ave
Rochester NY 14621-3001
Phone: 585-922-2000

May 7, 2015

Patient:            **Alexander Guerrero-Toro**
Date of Birth:   **12/28/1976**
Date of Visit:   **5/7/2015**

To Whom It May Concern:

Alexander Guerrero-Toro was seen and treated in our emergency department on 5/7/2015.

He may return to work / school / _5/9/15_____ on _____.

If you have any questions or concerns, please don't hesitate to call.

Sincerely,

_[signature]_

Emergency Department Provider

Page 1 of 1









## Earnhardt only bright spot after Talladega

## NASCAR extends Sprint Cup race at Glen through '20

Copyright © 2017 Newspapers.com. All Rights Reserved.

Newspapers
https://www.newspapers.com/image/135051353

Democrat and Chronicle (Rochester, New York) · Wed, Oct 28, 2015 · Other Editions · Page Z8
Printed on Oct 23, 2017



Copyright © 2017 Newspapers.com. All Rights Reserved.

POWERED BY
Newspapers.com

# (4) Events and notifications to the company of Cases No. 10178548 and 10178236.

Alexander Guerrero Toro                                    Case Number 10178548
610 Calm Lake Cir Apto B
Rochester ,NY 14612

I Alexander Guerrero Toro again do not agree with any of the statements made by NorthStar Demolition and Remediation, Inc., as they are false and extorted and the documents shown have a lack of credibility which I recommend that it be investigated for possible manipulation and falsification of documents .

The facts occurred as follows, and for proof and veracity of my word also along with my statement I show the documents that support the veracity of my words.

On October 26 I was placed in a job where my job had no purpose since I was placed near the checkpoint of the entrance, to take notes of the time of entry and exit and name of the company that entered To the plant, said work is done by the security guards of the plant in the entrance gate of the plant stressing that it was a cloudy day with winds and cold and I was unprotected since it was in the open while the guards Were protected at the checkpoint, this situation caused me not to be able to attend work on Tuesday 27 and have to attend the emergency corps of the general hospital.

Again on the 28th, when I returned to work, I presented to Raymon Cox the document that showed the visit to the hospital and my stay in the emergency room. Raymon Cox and Shane Beckingham report this morning at 7 am at the meeting. The meeting that nobody could work outside the plant as it could be very dangerous because of the weather conditions that had and yet I was the only worker who put to work outside the bildin and in the same job on the 26th day in which no I did not perform any function, emphasizing that I was under 400,000 volt high-voltage power cables and in front of a high-voltage transformer station at nine in the morning I pass by my Raymon Cox workstation and seeing the situation of the time It was raining and very windy, instead of taking me out of the danger it was he was laughing and going to the offices and at 9:30 am I was transferred by 911 in an ambulance To the hospital and hospitalized with an uncontrolled arterial impertinence and chest pains caused by the working conditions in which I was, I was discharged on the 29th at 2:22 pm, which the doctor tells me That I can not return to work until November 2, 2015.

On November 2, 2015 I gave the doctor's authorization that I could work and participate in all the work and Raymo Cox informs me that he can not leave me working because he has to send a document to a committee to see if I was working And they send me to the house, without a salary and on Friday, 6th of 2015, Raymon Cox calls me and he informs me to present me on Monday the 9th to the company at 8am and not to 7th that was my entry to work, When I arrived at the company on the 9th was present Victor a worker who served as translator and Raymon Cox tells Victor that I will retire the 10 hours overtime and that I will only work 40 hours a week, completely changing my schedule Work, that my new entry time was at 8 in the morning was the only worker who had to sign in the office at 8, my lunch schedule was put to me at 11 am and the exit to the4:30 pm, being the only worker of more than 60 workers at that time who was in the company that had taken overtime hours and had totally isolated him from the other workers because my schedule did not allow me to be in communication With my co-workers, as my schedule was at 11 noon and the other workers at 12 noon when they were leaving their lunch I was alone in my work without any supervision and Completely isolated since he was the only worker who was working from 12 to 1 in the afternoon and the others were in their lunch schedule, being exposed to it if an accident happened to me or some other event in my job nobody was He would find out until 1 midday when the workers returned to the work area

Alexander Guerrero Toro                                    Case Number 10178236
610 Calm Lake Cir Apto B
Rochester , NY 14612

In the first week of May of 2015 I find myself washing with the Power Washing machine in an industrial carbon filter and shredder machine, where it was contaminated with ratun, pigeon, lead, charcoal shit.

In that week specifically on Wednesday, May 6, 2015 at 12 noon I have to communicate that I have a fever and I feel bad about the flu or flu caused by the water and the contamination to which I was exposed, because although I had a suit Protector, water, grease and lead passed through the protective suit and one was always wet and contaminated.

On May 7, 2015, I have to go to the emergency department of the General Hospital because I was in poor condition.

On Monday, May 11, 2015 I tell Eddie de Jesus what happened and ask him if you can help me with the villain of the hospital or if you can raise my salary so I can pay the villain of the hospital since my wife was 5 months old. Pregnancy and things had been complicated, and I had been working with them for 3 months and deserved a raise because there were people winning more than me for the same job. Eddie de Jesus told me that he was going to talk to Jeff Beckingham.

In the following days I was told to Eddie de Jesus if I was going to raise the salary and he told me that a dollar and that never happened. Again I communicate my problem of the hospital vile to Shane Beckingham and he replies that with what they paid me I could pay the vile, that they would not pay me the vile nor raise my salary. In addition, the 25 hours of work that my health problem caused by the constant contamination of my work did not pay me either.

Alexander Guerrero Toro                              Case Number : 10178236
610 Calm Lake Cir Apto B
Rochester, NY 14612

On June 5, 2015 I was in my office washing with the power washing the mats that carried the charcoal to the plant, these mats were in channels on rises and quite long ones which were very annoying and was never standing straight was always inclined And the power wash made me the hardest job.

Day 5 in the afternoon at 5:30 pm I taught Eddie de Jesus the injuries he had on both legs because of the position he was working he told me to report it to Raymond Cox which I did when I was signing The exit sheet in front of the workers.

On June 6 at noon at lunch time again I show the injuries to Eddie de Jesus and tells me to take a pill for the pain and to shut my mouth.

Alexander Guerrero Toro
610 Calm Lake Cir Apto B
Rochester ,NY 14612

December 12-14-2015


Case No. 10178236

    I Alexander Guerrero Toro I do not agree with any of the statements made by Chief Beckingham or Eddie de Jesus since they are false and when the analyzes are identical and prepared. Then I explain the reasons and the only truth.

  1- I did not work only three or four weeks before the day of the injury, for five months I was working on the power washing machine, there is a record where the worker signs in the area that is working and there can verify the time And in the place that was working and what was the work that was done.

  2-On July 30, 2015, I told Eddie de Jesus that I was tired of the power washing machine and that I was training another person or that they put somebody else to help me and he told me that if he wanted an increase in A dollar to my salary to remain there and that shane Beckingham did not want me to change my position and the salary did not raise it after Eddie of Jesus promised me verbally.
A. Before July 31 they increased the salary to several workers and I never got to increase it.

  3- The facts happened as follows and not as the version they declare.
On Friday, August 14, 2015 at 12 noon I went to the office with Julio Gonzales that he left at 12 and did not know where to sign and I was going to explain where he had to go to sign. On the stairs I tell Jeeff Beckingham that I have the inflamed hand and with pain the former Sebastian communicates to Jeeff that he is of the power washing.
 On Monday 16 I have to leave work at 3pm because the pain would not let me work. Supervisor Shane Beckingham tells me in the presence of Eddie de Jesus that because of the pain in the arm I can not go, that if I go to the hospital, and I tell him not to go home. On Tuesday, August 17, in the morning at 9 am, I tell the forme Sebastian that I can not take more of the pain and he tells Eddie de Jesus and I go to the office. If I'm taking something for the pain and I say yes. Jeeff Beckingham tells me that as the medication is called and I send a message to my wife to send me a picture and she gives it to me, Jeeff tells me to increase the Acetaminophen dose of 500 which was what the medicine was called I had bought, and Eddie de Jesus translated me that Jeeff said that I did not work and that I sat in the dining room that if Monday, August 24, the pain had not relieved me, they would take me to the hospital.

  4- On Thursday, August 20, I can not go any further and I have emergency visits to the General Hospital at night.

  5-On the 21st I call to work and I communicate what happened, Alexis Guerrero communicates to Shane Beckingham the happened of my visit in the hospital, and Shane communicates to Alexis Guerrero that if I said in the hospital that had been in the Work and Shane tells me that Alexis Guerrero is going to come and get me to take me to work and take me to a clinic.

A. When I get to work, Eddie de Jesus tells me that the bosses want me to sign a paper that the injury had not been at work and I told him that I would not sign any documents because they better than anyone knew that I had spent at work.

B. On that day my wife was due for childbirth and Jeeff Beckingham tells Eddie de Jesus that if I signed the paper he would pay me the full week if it was a natural childbirth and if it was I would cease paying for two weeks in the house but With the condition that he had to sign the paper.

C. Shane Beckingham tells Eddie de Jesus to tell me in the form of a threat to the purpose that I sign the paper that when other workers found out that they were going to take the bonus that was given for not having an accident at work I was going To hit because I reported the accident was to withdraw the bond, that was a threat because in fact the bond was not withdrawn because my injury was caused by a repetitive job and not an accident.D. Safety Raimon Cox then makes the report and takes me to the Workfedical Clinic. We are joined by Victor, a Honduran who currently lives in North Carolina and was working with me to serve as a translator. Raimon Cox was trying to convince me that the doctor who attended me did not testify that my injury had been caused by repetitive work and when She disqualified me to 33 percent in the first consultation I had, he did not agree and gave his personal phone number as if it were mine for when I was called for questions or queries who spoke and in these documents I put copies of The aforementioned my role that I was given in the first consultation with my disability status and the number that appears are from the office and staff of Raimon Cox and not my personal number, from that same day began the problems towards me and The violations of my disability and discrimination.

_Alexander Guerrero Toro_

Alexander Guerrero Toro
Case No. 10178236

The alleged violations that appear in my case that I have missed are false since I have always called and informed my situation and if they are not signed by me is that the accusations are false since on October 21 I call the office and I Report my situation to Jeeff Beckingham at 9am, my hands hurt and were swollen and here I show you the evidence.

On October 30th I did not call since on the 29th I was discharged from the hospital and the doctor gave me a paper authorizing until November 2, 2015.

On September 9, 2015 I had a telephone interview with Beverly Gustafson (Medical Only Representative) his telephone number (518) 2207308 and in this interview I was informed that I was going to be taxed in this interview this information that I explained before And how the events happened. The interview was made by the telephone of Raimon Cox (321-271-6859).

Alexander Guerrero Toro                          Case Number 10178236
610 Calm Lake Cir Apto B
Rochester, NY 14612

On September 10, 2015, I have a consultation at NY PHYSICAL MEDICINE CENTER, EN 1295 PORTLAND AVENUE, STE 9 and they give me the RETURN TO WORK STATUS FORMS where my disability is explained and you could not use the right hand and none of the extremities of the Right arm this form was given to Raymond Cox.

On Monday, September 14, 2015 supervisor Shane Beckinghan puts me to work in the sun with Isabel a worker who was injured and has also been discriminated against in this company, in the form of blackmail they bring us the contaminated things for us to clean them. These work implements were contaminated with asbestos, lead and had to be cleaned in a closed area prepared for the contamination, emphasizing in my RETURN TO WORK STATUS FORMS I forbade doing this work as I had to use the right hand as it is the hand with Which I work because I am right not left-handed. At 5 and 30 of the same day September 14, 2015 the supervisor known as Honduran Tursio of nortcarolaina sees me and tells me that I had happened that his face was so red and burned.

On the night of September 14, 2015, I could not sleep from the pains in my hand and on the morning of September 15, 2015, after the meeting was over I told Adbiel Pereira to tell Shane Beckingham that I am not going to perform the Same job because the hand hurt too much and he comes furious making a phone call and says out loud that he's going to call every company in Rochester to never give me work.

Alexander Guerrero Toro                                    **Case Number :**10178236
610 CALM LAKE CIR APTO B
ROCHESTER ,NY 14612

On Monday, November 23, 2015 around 2:30 p.m. Raimon Cox is approaching me where I was working it was in the tanks that the water is filtered for decontamination, and tells me that it was missing out At 4:10 in the afternoon to his office that he needed to talk to me.

When I arrived at his office at the time that he had told me, Victor was sitting next to Victor, a Honduran translator, and informed Victor that we were going to leave the house because he did not want Jeeff Beckingham to hear our conversation, since He was sitting in the office and we went out in front of the scrape and we walked away a little, the first question he tells Victor to ask me is:

As I feel if I feel good in the water tanks
And I reply: that at that moment I felt better also tells me that he needs me to return to work with my restrictions that I had from the beginning, to try not to use the right hand or lift anything that weighed more than 10 Pounds and tells me that the whole week will ask me how I feel and if I feel good on the site that I am working on that moment we are talking Shane Beckingham arrives and in a tone of laughter says that if we had a separate meeting And Raimon Cox did not respond and the conversation ended and I retired as it was 4:30 p.m.

Alexander Guerrero Toro



**NEW YORK STATE** | Division of Human Rights

ANDREW M. CUOMO
Governor

HELEN DIANE FOSTER
Commissioner

November 5, 2015

NorthStar Demolition and Remediation, Inc.
Attn: Director of Human Resources
120 Elmgrove Road
Rochester, NY 14624

      Re:    Alexander Guerrero Toro v. NorthStar Demolition and Remediation, Inc.
            Case No. 10178236

      Enclosed is a copy of a verified complaint filed with the Division of Human Rights against you. This complaint, which alleges an unlawful discriminatory practice in violation of the New York State Human Rights Law, is being served upon you pursuant to Section 297.2 of the Human Rights Law (N.Y. Exec. Law, art. 15).

      Please submit a response **in duplicate** to each and every allegation in the complaint, complete the enclosed Respondent Information Sheet, and return the response and Information Sheet to the Division, at the address below, or via e-mail to roc.svr@dhr.ny.gov, **within fifteen (15) calendar days from the date of this letter.** The Division will not extend the time for this response, unless good cause is shown in a written application, submitted at least five (5) calendar days prior to the time the response is due. **Failure to respond could result in an adverse finding against you, which would be shared with, among others, the Secretary of State and the applicable State licensing agencies that govern your business.**

      The Human Rights Law prohibits retaliation against any person because he or she has opposed discriminatory practices, filed a discrimination complaint, or participated in any proceeding before the Division. Human Rights Law § 296.7.

      Anyone who willfully resists, prevents, impedes or interferes with the Division's investigation shall be guilty of a misdemeanor punishable by imprisonment, by fine, or by both. Human Rights Law § 299.

      As the enclosed information sheet provides, the Division will conduct a prompt investigation, based on the complaint and your response, which may include interviews with your representatives and the collection of documents. The Division expects your full cooperation in this investigation. After the investigation is completed, the Division will make a determination as to whether there is probable cause to believe that unlawful discrimination has occurred. You will be notified of this determination.

      **Protection of personal privacy:** In most cases, you will be expected to submit documents in support of your response to the complaint. The Division observes a personal



NEW
YORK
STATE | Division of
Human Rights

ANDREW M. CUOMO                    HELEN DIANE FOSTER
Governor                            Commissioner

November 24, 2015

NorthStar Demolition and Remediation, Inc.
Attn: Director of Human Resources
120 Elmgrove Road
Rochester, NY 14624

        Re:    Alexander Guerrero Toro v. NorthStar Demolition and Remediation, Inc.
               Case No. 10178548

        Enclosed is a copy of a verified complaint filed with the Division of Human Rights
against you. This complaint, which alleges an unlawful discriminatory practice in violation of
the New York State Human Rights Law, is being served upon you pursuant to Section 297.2 of
the Human Rights Law (N.Y. Exec. Law, art. 15).

        Please submit a response **in duplicate** to each and every allegation in the complaint,
complete the enclosed Respondent Information Sheet, and return the response and Information
Sheet to the Division, at the address below, or via e-mail to roc.syr@dhr.ny.gov, **within fifteen
(15) calendar days from the date of this letter.** The Division will not extend the time for this
response, unless good cause is shown in a written application, submitted at least five (5) calendar
days prior to the time the response is due. **Failure to respond could result in an adverse
finding against you, which would be shared with, among others, the Secretary of State and
the applicable State licensing agencies that govern your business.**

        The Human Rights Law prohibits retaliation against any person because he or she has
opposed discriminatory practices, filed a discrimination complaint, or participated in any
proceeding before the Division. Human Rights Law § 296.7.

        Anyone who willfully resists, prevents, impedes or interferes with the Division's
investigation shall be guilty of a misdemeanor punishable by imprisonment, by fine, or by both.
Human Rights Law § 299.

        As the enclosed information sheet provides, the Division will conduct a prompt
investigation, based on the complaint and your response, which may include interviews with
your representatives and the collection of documents. The Division expects your full
cooperation in this investigation. After the investigation is completed, the Division will make a
determination as to whether there is probable cause to believe that unlawful discrimination has
occurred. You will be notified of this determination.

        **Protection of personal privacy:** In most cases, you will be expected to submit
documents in support of your response to the complaint. The Division observes a personal

privacy protection policy consistent with Human Rights Law § 297.8 which governs what information the Division may disclose, and the N.Y. Public Officer's Law § 89 and § 96-a, which prohibit disclosure of social security numbers and limit further disclosure of certain information subject to personal privacy protection. Please redact or remove personal information from any documentation submitted to the Division, unless and until the Division specifically requests any personal information needed for the investigation. The following information should be redacted: the first five digits of social security numbers; dates of birth; home addresses and home telephone numbers; any other information of a personal nature. The following documentation should not be submitted unless specifically requested by the Division: medical records; credit histories; resumes and employment histories. The Division may return your documents if they contain personal information that was not specifically requested by the Division. If you believe that inclusion of any such personal information is necessary to your response, please contact me to discuss before submitting such information.

If you have any questions about the process generally, or how to submit your response, please call me at (585) 238-8250.

Very truly yours,

Julia B Day

Julia B. Day
Regional Director

cc:     NorthStar Group Services, Inc.
        Attn: Director of Human Resources/Legal
        Seven Penn Plaza
        370 7th Avenue, Suite 1803
        New York, NY 10001

Enclosures:
Verified Complaint
Respondent Contact Information Form
Information for Respondents



**NEW YORK STATE** | Division of Human Rights

ANDREW M. CUOMO
Governor

HELEN DIANE FOSTER
Commissioner

November 24, 2015

NorthStar Demolition and Remediation, Inc.
Attn: Director of Human Resources
120 Elmgrove Road
Rochester, NY 14624

Re:   Alexander Guerrero Toro v. NorthStar Demolition and Remediation, Inc.
      Case No. 10178548

Enclosed is a copy of a verified complaint filed with the Division of Human Rights against you. This complaint, which alleges an unlawful discriminatory practice in violation of the New York State Human Rights Law, is being served upon you pursuant to Section 297.2 of the Human Rights Law (N.Y. Exec. Law, art. 15).

Please submit a response **in duplicate** to each and every allegation in the complaint, complete the enclosed Respondent Information Sheet, and return the response and Information Sheet to the Division, at the address below, or via e-mail to roc.syr@dhr.ny.gov, **within fifteen (15) calendar days from the date of this letter.** The Division will not extend the time for this response, unless good cause is shown in a written application, submitted at least five (5) calendar days prior to the time the response is due. **Failure to respond could result in an adverse finding against you, which would be shared with, among others, the Secretary of State and the applicable State licensing agencies that govern your business.**

The Human Rights Law prohibits retaliation against any person because he or she has opposed discriminatory practices, filed a discrimination complaint, or participated in any proceeding before the Division. Human Rights Law § 296.7.

Anyone who willfully resists, prevents, impedes or interferes with the Division's investigation shall be guilty of a misdemeanor punishable by imprisonment, by fine, or by both. Human Rights Law § 299.

As the enclosed information sheet provides, the Division will conduct a prompt investigation, based on the complaint and your response, which may include interviews with your representatives and the collection of documents. The Division expects your full cooperation in this investigation. After the investigation is completed, the Division will make a determination as to whether there is probable cause to believe that unlawful discrimination has occurred. You will be notified of this determination.

**Protection of personal privacy:** In most cases, you will be expected to submit documents in support of your response to the complaint. The Division observes a personal

privacy protection policy consistent with Human Rights Law § 297.8 which governs what information the Division may disclose, and the N.Y. Public Officer's Law § 89 and § 96-a, which prohibit disclosure of social security numbers and limit further disclosure of certain information subject to personal privacy protection. Please redact or remove personal information from any documentation submitted to the Division, unless and until the Division specifically requests any personal information needed for the investigation. The following information should be redacted: the first five digits of social security numbers; dates of birth; home addresses and home telephone numbers; any other information of a personal nature. The following documentation should not be submitted unless specifically requested by the Division: medical records; credit histories; resumes and employment histories. The Division may return your documents if they contain personal information that was not specifically requested by the Division. If you believe that inclusion of any such personal information is necessary to your response, please contact me to discuss before submitting such information.

If you have any questions about the process generally, or how to submit your response, please call me at (585) 238-8250.

Very truly yours,

*Julia B Day*

Julia B. Day
Regional Director

Enclosures:
Verified Complaint
Respondent Contact Information Form
Information for Respondents

(5) Psychological Exam

Alexander Guerrero Toro
**Applicant's Name**

(585) 350 4183
**Applicant's Phone**

610 Calm Lake Cir
Apt B Rochester NY 14612
**Applicant's Full Address**

9/19/2017
**Date**

SEND TO:
CAREER SYSTEMS
96 COLLEGE AVENUE, 2ND FLOOR
ROCHESTER, NY 14607
PHONE: 585-544-4880
FAX: 585-544-9070

FAX → 585 544 9070

# REFERRAL TO ACCES-VR
# FOR INDIVIDUALS RECEIVING
# MENTAL HEALTH TREATMENT

In order for ACCES-VR to process this referral packet, it **MUST include:**
- Facility's own Psychosocial/Intake Summary
- Current treatment plan review
- Discharge summary, if appropriate

**Please note:** Incomplete referral packets will be held and the individual will not be seen by an ACCES-VR counselor until all the required information is received. If you have any questions, please call your ACCES-VR liaison counselor.

**New York State Education Department**
**Office of Adult Career and Continuing**
**Education Services (ACCES-VR)**
**109 South Union Street, 2nd Floor**
**Rochester, New York 14607**
**Telephone: (585) 238-2900**
**Fax: (585) 325-2001**

## Treatment Report

This report is needed by the ACCES-VR counselor to establish eligibility for VR services and/or to develop an individualized plan for employment.  You may complete this form or provide a typed narrative which includes all of the required information. Thank you!

Individual's Name: _Guerrero Toro_____ ___Alexander_____ _____
                              (Last)                          (First)                                   (M.I.)

Date of Birth: _12_ / _28_ / _76_

## I.  Current Diagnosis
Use most current DSM Classifications.  **Please include the written diagnosis and the appropriate ICD number:**

___Major Depressive Disorder_____

___Anxiety Disorder_____

_____

_____

_____

**Please complete the following, checking "Yes" or "No", as appropriate.**

## II. Therapeutic Participation/Progress

1. Individual has responsibly participated and made satisfactory      ☑ Yes        ☐ No
   progress in treatment/therapy:

   If "No", please describe: _____

   _____

   Frequency of therapy appointments: __Monthly_____

Revised 12/16                                                    Mental Health Referral
                                                                         Page 2 of 4

2a. Are medications currently prescribed?  ☑ Yes  ☐ No

2b. If yes, what are the current medications (type and frequency)? _buproprion daily_
_escitalopram daily, trazodone PRN_

2c. Individual is stable on psychotropic medication and is taking it as prescribed.  ☑ Yes  ☐ No

3. Are case management services being provided?  ☐ Yes  ☑ No
   If "Yes",
      Name of Case Manager: _____  Phone: _____
      Please Print

## III. Chemical Dependency

Does the individual have a history of drug or alcohol abuse?  ☐ Yes  ☑ No
   If "Yes", has treatment been recommended?  ☐ Yes  ☐ No
   Has treatment been completed?  ☐ Yes  ☐ No

## IV. Please discuss your opinion on the following factors to be considered in relation to training, education and employment services:

### 1. Personal Awareness and Motivation

Degree of understanding of capacities and limitations and realistic decision-making skills. How has the individual demonstrated an understanding of his or her need for ACCES-VR services to obtain employment?

_Patient understand ACCESS VR will help him explore his abilities_
_within his limitations_

### 2. Functional Limitations

Response to pressure, supervision, working conditions to be avoided, etc.:

_Patient has a history of working and did well with pressure_
_and supervision._
_Avoid large crowds._

### 3. Barriers to Employment

Please indicate how the individual's disability has been an obstacle to employment and/or the reason(s) why s/he can't or shouldn't return to previous employment:

_Patient has some physical/health issues that caused him to_
_be taken out of work._

Mental Health Referral
Page 3 of 4

**4. Work Ability Estimate**

☐ Excellent     ☑ Good     ☐ Fair     ☐ Poor

Explain reasoning:_____

**5. Housing**
Individual has a stable residence          ☑ Yes     ☐ No

**6. Legal**
Has the individual ever been convicted of a felony?     ☐ Yes     ☑ No

If "Yes", please explain: _____

_____

Are there any pending charges?          ☐ Yes     ☑ No

If "Yes", please explain:_____

_____

**7. Recommendations to ACCES-VR counselor:**
Pertinent factors which will assist in ACCES-VR's planning and working with the individual:

~~Parent is spanish speaking~~

_____

_____

Primary Therapist: _Jacquetta Mcabie_          Phone: _922-7403_
                        Please Print                              Ext

Agency Name: _Genesee Mental Health_

Agency Address: _224 Alexander St_

Date of Report: _9/20/2017_

Signature: _____
                              Person completing the form

Title and Credentials: _LCSW_